**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SCOTT FOSTER,

       Plaintiff,

v.

BANK OF AMERICA, N.A., and US
BANK, N.A. as Successor Trustee to
Bank of America, as Successor Trustee
to LaSalle Bank, N.A., Trustee for the
Holders of the Merrill Lynch First
Franklin Mortgage Loan Trust,
Mortgage Loan Asset-Backed-
Certificates, Series 2006-FF-18,

       Defendants.

Case No. _____

Hon. _____

Removed from:
Circuit Court for the County of Macomb
Case No. 12-2102-CH

_____

## NOTICE OF REMOVAL FROM STATE COURT

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1332, 1441(a), and 1446,

the above-captioned action, which is currently pending in the Circuit Court for the County of

Macomb in the State of Michigan is hereby removed by Defendants Bank of America, N.A.

("BANA") and US Bank, N.A. as successor trustee to Bank of America, N.A., as Successor by

Merger to LaSalle Bank, N.A., as the Trustee for First Franklin Mortgage Loan Trust, Mortgage

Loan Asset-Backed-Certificates, Series 2006-FF-18, ("US Bank") (incorrectly named as US

Bank, N.A. as Successor Trustee to Bank of America, as Successor Trustee to LaSalle Bank,

N.A., Trustee for the Holders of the Merrill Lynch First Franklin Mortgage Loan Trust,

Mortgage Loan Asset-Backed-Certificates, Series 2006-FF-18) (collectively, "Defendants") to

the United States District Court for the Eastern District of Michigan, by the filing of this Notice

of Removal with the Clerk of the United States District Court for the Eastern District of

Michigan. As grounds for removal, Defendants state as follows:

1.      On or about May 9, 2012, Plaintiff filed an action in the Circuit Court for the County of Macomb, State of Michigan, entitled *Foster v. Bank of America, N.A., et al.,* Case No. 12-2102-CH (the "State Court Action").

2.      Pursuant to 28 U.S.C. § 1446(a), a complete copy of all process and pleadings served upon Defendants in the State Court Action is attached hereto as **Exhibit 1**.

3.      Defendants were first served with the Summons and Complaint on May 21, 2012.

4.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because it has been filed within 30 days after Defendants' receipt of the Summons and Complaint.

5.      This Court is the district and division "embracing the place where [the State Court] action is pending." 28 U.S.C. § 1441(a).  The Wayne County Circuit Court is located in the Eastern District of Michigan.

## FEDERAL QUESTION EXISTS

6.      This action is removable to this Court under 28 U.S.C. § 1441(a), because it is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331.

7.      This is a civil action over which this Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the Plaintiff's Complaint purports to assert a federal causes of action against Defendants arising out of the Federal Fair Debt Collection Practices Act.  (*See* **Exhibit 1**, Complaint, Count 6.)  Thus, this case is a civil action over which this Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331.

8.      Accordingly, this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, because Plaintiff's Complaint is founded upon claims or rights arising under the laws of the United States.

9.      Because this Court has original jurisdiction over 28 U.S.C. § 1331, and because

2

all other prerequisites for removal have been satisfied, this action is removable under 28 U.S.C. § 1441.

## DIVERSITY JURISDICTION EXISTS

10.    This Court has original diversity jurisdiction pursuant 28 U.S.C § 1332, because this action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs and attorneys' fees.

11.    <u>Plaintiff</u>. For purposes of diversity jurisdiction, a person is a citizen of the state in which he or she is domiciled. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Here, Plaintiff is a resident of Harrison Township, Michigan. (*See* **Ex. 1**, Complaint, ¶ 1.) Therefore, upon information and belief, Plaintiff is domiciled in the State of Michigan.

12.    <u>BANA</u>. BANA was and is a national banking association. For purposes of diversity jurisdiction, a national banking association is deemed to be a citizen of the state in which it is located. 28 U.S.C. § 1348. A national banking association is "located" in the "State designated in its articles of association as its main office." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). According to its Articles of Association, BANA's main office is in the City of Charlotte, State of North Carolina. Thus, BANA is a citizen of the State of North Carolina and is not and has never been a citizen of the State of Michigan, within the meaning of 28 U.S.C. § 1332(c).

13.    <u>US Bank</u>. US Bank was and is a national banking association. For purposes of diversity jurisdiction, a national banking association is deemed to be a citizen of the state in

which it is located.  28 U.S.C. § 1348.  A national banking association is "located" in the "State designated in its articles of association as its main office."  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006).  US Bank's main office is in Minneapolis, Minnesota.  Thus, US Bank is a citizen of the State of Minnesota and is not and has never been a citizen of the State of Michigan, within the meaning of 28 U.S.C. § 1332(c).

14.    Thus, complete diversity exists because Plaintiff is a citizen of Michigan and the Defendants are citizens of North Carolina and Minnesota.

15.    Pursuant to L.R. 81.1(a) and (b) and 28 U.S.C. § 1332(a), the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs and attorneys fees.  Although Plaintiff does not identify a sum certain in his Complaint, the fair market value of the property at issue is in excess of $75,000.

16.    Plaintiff seeks declaratory and injunctive relief in his Complaint.  (*See,* **Ex. 1**, Counts 3-7)  Where a plaintiff seeks specific performance or injunctive relief, the amount in controversy is measured by "the value of the object that is the subject matter of the action." *Lorimer ex rel. Estate of Lorimer v. Berrelez,* 331 F. Supp. 2d 585, 591 (E.D. Mich. 2004) (citations omitted); *see also Cohn v. Petsmart*, 281 F.3d 837, 840 (9th Cir. 2002) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)) (holding "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Nordica S.P.A. v. Icon Health & Fitness, Inc.*, 2009 WL 2462570, *6, fn. 4 (D.N.H. 2009) (citing *Lee Sch. Lofts, L.L.C. v. Amtax Holdings 106 L.L.C.*, 2008 WL 4936479, at *3 (E.D.Va. Oct. 29, 2008)) (observing "[w]hen specific performance is the desired remedy, the amount in controversy requirement is satisfied if 'either the "direct pecuniary value" of the right the plaintiff seeks to enforce ... or the cost to the

4

defendant of complying with any prospective equitable relief exceeds $75,000.'"); *Neely v. Consol Inc.*, 25 Fed. Appx. 394, 400 (6th Cir. 2002) (holding amount in controversy was equal to amount of lease). Because the object of this litigation includes real property (valued in excess of $75,000) the object of the litigation is in excess of $75,000.00.

17.     While Defendants deny the allegations in Plaintiff's Complaint, and deny any liability to Plaintiff whatsoever, if those allegations are proven to be true, the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs and attorneys fees. Notwithstanding that the jurisdictional requirements have been met, nothing in this Notice of Removal should be construed as an admission that Plaintiff is entitled to any judgment or relief in his favor.

18.     A Notice of Filing of Removal and a copy of this Notice of Removal from State Court will be filed with the Macomb County Circuit Court as required by 28 U.S.C. § 1446(d). (*See,* **Exhibit 2**) Copies of the same will be served upon all counsel of record upon the filing of this Notice.

THEREFORE, Defendants hereby remove the State Court Action from the Circuit Court of Macomb County, State of Michigan, to this Court, and request that the Court take jurisdiction of this civil action to the exclusion of any further proceedings in the State court.

Dated:  June 4, 2012                                Respectfully submitted,

                                                    DICKINSON WRIGHT PLLC

                                                         /s/ Amy Sabbota Gottlieb
                                                    By:_____
                                                    Amy Sabbota Gottlieb (P67020)
                                                    Dickinson Wright PLLC
                                                    *Attorneys for Defendant*
                                                    2600 West Big Beaver Road, Suite 300
                                                    Troy, Michigan 48084-3312
                                                    (248) 433-7286

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2012, I electronically filed the above document(s) with the Clerk of the Court using the ECF system, and I hereby certify that I have mailed by United States Postal Service the foregoing to:

Adam J. Gantz, Esq.
Gantz Associates
27750 Middlebelt Road, Suite 100
Farmington Hills, MI  48334

_/s/_ Amy Sabbota Gottlieb
Amy Sabbota Gottlieb (P67020)
Dickinson Wright PLLC
2600 West Big Beaver Rd., Ste. 300
Troy, MI  48084
(248) 433-7259
agottlieb@dickinsonwright.com

6

# Ex. 1

Delridge Corporation  (800) 530-2255
Approved, SCAO

Original - Court
1st copy - Defendant

2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 16th   JUDICIAL DISTRICT   JUDICIAL CIRCUIT   COUNTY PROBATE | **SUMMONS AND COMPLAINT** | 12²⁰¹² - 2 1 0 2ᴼᴴ - CH |

| Court Address | | Court telephone no. |
|---|---|---|
| 40 N. Main Street, Mt. Clemens, MI 48043 | | (586) 469-5351 |

| Plaintiff name(s), address(es) and telephone no(s).<br>SCOTT FOSTER, and individual, | V | Defendant name(s), address(es), and telephone no(s).<br>Bank of America, NA<br>100 North Tryon Street<br>Charlotte, NC 28202 |
|---|---|---|
| **Plaintiff attorney, bar no., address, and telephone no.**<br>Gantz Associates<br>By:  Adam J. Gantz (P58558)<br>27750 Middlebelt Road, Suite 100<br>Farmington Hills, MI 48334      (248) 987-6505 | | |

**SUMMONS**      **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan, you are notified:
1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>MAY  9 2012 | This summons expires*<br>-- AUG  8 2012 | Court clerk<br>*Carmella Sabaugh* |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff.  Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains  ☐ is no longer     pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains  ☐ is no longer     pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Harrison Twp., MI | Defendant(s) residence (include city, township, or village)<br>Charlotte, NC |
|---|---|
| Place where action arose or business conducted<br>Harrison Twp., MI | |

| 5/9/12<br>Date | Signature of attorney/plaintiff  Adam J. Gantz (P58558) |
|---|---|

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

**MC 01**  (6/04)  **SUMMONS AND COMPLAINT**          MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

Delridge Corporation  (800) 530-2255
Approved, SCAO

Original - Court
1st copy - Defendant

2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 16th  JUDICIAL DISTRICT  JUDICIAL CIRCUIT  COUNTY PROBATE | **SUMMONS AND COMPLAINT** | 2012 -          - CH |

12 - 2 1 0 2 - CH

Court Address
40 N. Main Street, Mt. Clemens, MI 48043

Court telephone no.
(586) 469-5351

| Plaintiff name(s), address(es) and telephone no(s).  SCOTT FOSTER, and individual, | V | Defendant name(s), address(es), and telephone no(s).  US BANK, NA, as Successor Trustee  U.S. Bancorp Center  800 Nicollet Mall  Minneapolis, MN 55402 |
|---|---|---|

Plaintiff attorney, bar no., address, and telephone no.
Gantz Associates
By:  Adam J. Gantz (P58558)
27750 Middlebelt Road, Suite 100
Farmington Hills, MI 48334          (248) 987-6505

**SUMMONS**    **NOTICE TO THE DEFENDANT:**  In the name of the people of the State of Michigan, you are notified:
1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued  MAY  9 2012 | This summons expires*  AUG  8 2012 | Court clerk  Carmella Sabaugh |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT**  *Instruction:  The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff.  Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐  There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐  An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☒  There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐  A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)  Harrison Twp., MI | Defendant(s) residence (include city, township, or village)  Minneapolis, MN |
|---|---|
| Place where action arose or business conducted  Harrison Twp., MI | |

| 5/9/12  Date | Signature of attorney/plaintiff  Adam J. Gantz (P58558) |
|---|---|

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

**MC 01**  (6/04)  **SUMMONS AND COMPLAINT**        MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

### STATE OF MICHIGAN
### IN THE MACOMB COUNTY CIRCUIT COURT

SCOTT FOSTER, and individual,

|                |                          |
|----------------|--------------------------|
| Plaintiffs,    | No. 12-            CH    |
|                | Hon.                     |

v.

BANK OF AMERICA, NA, and US BANK, NA, as Successor
Trustee to Bank of America, as Successor Trustee to LaSalle Bank, NA,
Trustee for the Holders of the Merrill Lynch First Franklin Mortgage Loan
Trust, Mortgage Loan Asset-Backed-Certificates, Series 2006-FF-18,

Defendants.

---

**GANTZ ASSOCIATES**
BY:   ADAM J. GANTZ (P58558)
       JOHN B. BURCHAM (P45079)
       NICKOLAS C. BUONODONO (P70835)
Counsel for Plaintiffs
27750 Middlebelt Road, Suite 100
Farmington Hills, MI 48334
Telephone: (248) 987-6505

**RECEIVED**

MAY 9 2012

CARMELLA SABAUGH
MACOMB COUNTY CLERK

---

*There is no other pending or resolved civil matter arising out
of the transaction or occurrence alleged in this Complaint.*

### VERIFIED COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiff, Scott Foster, through his attorneys, Gantz Associates, hereby submits the following

Verified Complaint against Defendants, Bank of America, NA ("Bank of America"), and US Bank, NA,

solely in its role as Successor Trustee to Bank of America, as Successor Trustee to LaSalle Bank, NA,

Trustee for the Holders of the Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-

Backed-Certificates, Series 2006-FF-18 ("US Bank").

### JURISDICTIONAL ALLEGATIONS

1.      Plaintiff is an individual, who resides at the real property at issue in the instant action,

which is located in the Township of Harrison, County of Macomb, State of Michigan, and is legally

described as follows:

> Lot 135, Lakeside Gardens, according to recorded Plat thereof, as recorded in Liber 2, Page 233 of Plats, Macomb County Records,

Tax ID: 17-12-30-203-028, commonly known as 27021 Hickler Lane (the "Property").

2.     Bank of America is a national banking association, which is headquartered at 100 North Tryon Street, Charlotte, NC 28202, and which is authorized to conduct business and which does in fact conduct business within the jurisdiction of this Honorable Court.

3.     US Bank is the Successor Trustee for the asset-backed-security in which the loan at issue was pooled. US Bank is headquartered at U.S. Bancorp Center, 800 Nicollet Mall, Minneapolis, MN 55402, and US Bank is authorized to conduct business and does in fact conduct business within the jurisdiction of this Honorable Court.

4.     Jurisdiction is proper in this Court, pursuant to Mich. Comp. Laws § 600.601, as Plaintiff seeks, among other things, equity with respect to the Property, which is a unique parcel of real estate that is not adequately compensable in monetary damages.

5.     Venue is proper in this Court pursuant to Mich. Comp. Laws § 600.1605(c), for the reason that the Property is located within the jurisdiction of this Honorable Court.

6.     Jurisdiction is further proper in this Court, as Plaintiff seeks redress under Michigan law, and the amount in controversy exceeds $25,000.

## COMMON ALLEGATIONS

7.     Plaintiff hereby adopts and incorporates by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

8.     On October 17, 2006, a mortgage (the "Mortgage") and a related note (the "Note") at issue were executed by and between Plaintiffs and Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely in its capacity as "Nominee" for the actual mortgagee and "Lender"), First Franklin, a

division of National City Bank ("First Franklin"), and said Mortgage was recorded on November 15, 2006, in Liber 18308, Page 786, Macomb County Records. (*See* Mortgage – **Ex. "A"**.)

9.      Almost immediately after execution of the Mortgage and Note, First Franklin or one of the Defendants pooled the same together with a number of other mortgage loans, provided a phony AAA rating by agencies bribed by entities like Defendants to do so, and sold all over the world as an exotic financial product known as a "mortgage-backed security" or "asset-backed-security" ("ABS").

10.     As discussed below, when a loan is pooled into an ABS, it is subject to a pooling and servicing agreement, which is governed by New York law, and absolutely requires the transfer of the Mortgage and Note be done in a specified way, within a specified time-frame, i.e. one year.

11.     There has **never** been **any** Assignment recorded in the local Register of Deeds from First Franklin to Bank of America, US Bank, or **any** third party.

12.     Since the ownership of Plaintiffs' Loan was muddled by the pooling of the same into an ABS, and an ABS cannot collect monthly mortgage payments, answer borrower phone calls, and manage escrow accounts, Bank of America continued purportedly to service Plaintiff's loan.

13.     In late 2010, Plaintiff began suffering economic hardship, at which point he contacted Bank of America, requested assistance, and began working with Bank of America on a HAMP or other loan modification.

14.     Plaintiff was current in his mortgage when he requested assistance.

15.     In response to Plaintiff's inquiries, Bank of America representatives advised Plaintiff that he could not qualify for modification or otherwise save his home, unless he were to fall behind at least two months, and reapply, at which point he would be approved for a loan modification.

16.     Plaintiff followed the instructions of his loan servicer at Bank of America, ceased making payments, and contacted Bank of America to commence the modification process.

17.     After tricking Plaintiff into falling into default with knowing lies about modification, Bank

ABS several years prior, without completing **any** of the requisite paperwork, obtaining **any** of the necessary assignments, and without properly transferring **any** of the required documentation, such as but not limited to the actual Mortgage and Note.

18.     Specifically, on November 10, 2011, almost exactly five years after the pooling and servicing of the loan, and therefore four years too late for the document to have any legal effect under the terms of the applicable Pooling and Servicing Agreement, a void Assignment of Mortgage was executed (the "1st Void Assignment"), purporting to convey the Mortgage from MERS to US Bank, and the same was recorded on December 8, 2011, in Liber 21022, Page 262, Macomb County Records. (*See* 1st Void Assignment – **Ex. "B".**)

19.     As more fully discussed in Count 1 below, the 1st Void Assignment is void for a number of independent reasons, including but not limited to the facts that the document was not executed by MERS on behalf of First Franklin, and as such, the document assigns only MERS' interest and not First Franklin's interest, to US Bank.

20.     In addition, the document is void, because it was forged by a robo-signer or on behalf of a robo-signer, and the authority upon which the Assignment was purportedly made therefore did not exist. (*See* Proof Signatory and Notary are Fraudulent Robo-Signers – **Ex. "C".**)

21.     Almost immediately after falsifying a paper trail that Defendants thought would make it easier to steal Plaintiff's home right out from underneath him, Defendants commenced foreclosure proceedings against Plaintiff, by sending a 14 day notice inviting Plaintiff to participate in the statutory modification process governed by MCL 600.3205 et seq.

22.     Plaintiff participated in the statutory modification process.

23.     At all times, Plaintiff has qualified for a HAMP or other loan modification programs.

24.     Although the Statutory Modification laws require the person with authority to modify a loan meet with Plaintiffs and participate in the process, the only persons or entities involved in the

4

statutory modification process were the foreclosing law firm, and the purported servicing agent, Bank of America, neither of which had **any** authority to modify the loan – as that authority rests with US Bank, only.

25.     Nonetheless, Plaintiff completed and returned the financial package, which showed that he qualified for HAMP and other loan modification programs.

26.     While Plaintiff was in the process of attempting to save his home via the statutory modification process, Defendants once again apparently determined that they did not have a sufficient paper trail to foreclose, so once again Defendants prepared to clean up the mess caused by the pooling of the Mortgage and Note into an exotic ABS several years prior, without completing **any** of the requisite paperwork, obtaining **any** of the necessary assignments, and without properly transferring **any** of the required documentation, such as but not limited to the actual Mortgage and Note.

27.     Specifically, On January 11, 2012, Defendants fraudulently and disingenuously forged a **second** Assignment, this time apparently attempting to correct the errors identifying MERS as the mortgagee in the prior Void Assignment.

28.     The 2nd Void Assignment has even more fatal flaws than the 1st Void Assignment, and otherwise is void and does not create a record chain of title absolutely required for foreclosure under Michigan statutory law.

29.     Specifically, as but one glaring example, the 2nd Void Assignment purportedly conveys the Mortgage **from** US Bank, which did not maintain any interest in the Mortgage at the time pursuant to the chain of title, **right back to** US Bank! (*See* 2nd Void Assignment – **Ex. "D"**.)

30.     In addition, the 2nd Assignment appears to have been fraudulently forged and notarized, by robo-signers who never seem to sign their names **even close** to the same way twice, as evidenced by the attached very different signatures of "notary public" Sache N. Keeton. (*See* Proof notary, Sache Keeton's signature is a forgery – **Ex. "E"**.)

5

31.     The 2nd Void Assignment was recorded in Liber 21116, Page 306, Macomb County Records. (*See* 2nd Void Assignment – **Ex. "D".**)

32.     Just like the 1st Void Assignment, the 2nd Void Assignment is void for a number of reasons, including but not limited to the fact that the document was fraudulently forged by a robo signer masquerading as someone they were not, as more fully set forth in Count 1, below.

33.     While Defendants were scrambling to forge documents purporting to provide a record chain of title for foreclosure, they were pretending to review Plaintiff's request for modification in good faith.

34.     In fact, Defendants were preparing to deny Plaintiff's request, no matter whether he qualified or not.

35.     Plaintiff's request for modification was ultimately denied.

36.     The reason for the denial had nothing to do with Plaintiff's eligibility for modification, and everything to do with the incredible financial windfall that US Bank would get from a bailout or by cashing in on a mortgage insurance policy, a portion of which would then be shared in the form of a foreclosure bonus to Bank of America.

37.     Under Michigan law, if a mortgagor qualifies for modification, but the foreclosing entity does not wish to grant the same, the foreclosing entity loses the right to a cheap and easy foreclosure by advertisement and auction sale, and is strictly required to file an expensive and time-consuming lawsuit against the mortgagor for judicial foreclosure.

38.     Given that Plaintiff qualified for modification, Bank of America never should have scheduled an auction sale, as Mich. Comp. Laws § 600.3204 and Mich. Comp. Laws § 600.3205c required that if Bank of America intended to seek foreclosure, the same could only be done judicially.

39.     Notwithstanding all of the above, Bank of America scheduled a foreclosure auction sale for Thursday, May 11, 2012, in violation of both the Michigan foreclosure statute, and the Statutory

6

Modification Laws.

40.     Plaintiff has suffered damages as a result of Defendants' above-referenced misconduct.

41.     In addition to the foregoing, Bank of America was fully aware that Plaintiff is represented by counsel, but nonetheless since that time have committed multiple violations of the Michigan and Federal Fair Debt Collection Practices Acts, which are too numerous to cite individually in this Complaint, and the details of which will be further fleshed out through discovery, but which include but are not limited to the failure to properly and completely give a validation notice to Plaintiff; misrepresentations to Plaintiff about the terms of the alleged debt, including but not limited to the amount due, as a result of, among other things, lies about the amount paid for property taxes; and false threats to initiate legal action against Plaintiff.

42.     Finally, Defendants have muddled the foreclosure process, by fraudulently overcharging escrow, and by failing to credit payments made by Plaintiff to his account, thereby actually causing the foreclosure, by demanding substantially more from Plaintiff to reinstate than is actually due and owing.

43.     The Property is a unique parcel of real estate which cannot be adequately compensated in monetary damages, and Plaintiff would therefore suffer irreparable harm if immediate injunctive relief is not granted.

## COUNT 1 – NO PROOF OF OWNERSHIP OF LOAN/AUTHORITY TO FORECLOSE

44.     Plaintiff hereby adopts and incorporates by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

45.     Michigan's foreclosure by advertisement statute, MCL 600.3204, requires as follows:

(1) Subject to subsection (4), a party may foreclose a mortgage by advertisement if all of the following circumstances exist:

.... (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

7

(3) If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

46.     Therefore, in order for Bank of America to have a proper chain of ownership of the Mortgage and Note, there would have to be "a record chain of title" including a valid assignment to Bank of America.

47.     However, there is no such proof in the chain of title, and as such, the foreclosure is illegal, as it is in violation of the above-quoted provisions of Mich. Comp. Laws § 600.3204.

48.     In fact, as more fully set forth in the Common Allegations above, the chain of ownership of the Mortgage and Note at issue began and ended with First Franklin, as First Franklin is the mortgagee under the terms of the Mortgage, and First Franklin has **never** assigned its interests to **any** third party.

49.     Instead, as set forth in the Common Allegations above, on or about November 10, 2011, a known robo-signer, at the request of Defendants, forged an Assignment of Mortgage (the "1st Void Assignment"), and the same was recorded in the offices of the Macomb County Register of Deeds on December 8, 2011, in Liber 21022, Page 262, Macomb County Records. (*See* Invalid Assignment – **Ex. "B"**; Proof Re: Robo-Signers – **Ex. "C".**)

50.     Upon information and belief, the document was not actually signed by the person claiming to have signed it and/or was not actually notarized by the purported notary public, as both names have been used as signatories to documents all over the country, and their signatures never seem to match up.

51.     This fact, standing alone, invalidates the foreclosure proceedings.

52.     In the alternative, even if the signatures of both the signor, and notary, are authentic and not forgeries or computer generated cut and pastes by an overworked robo-signing operation, the stated authority upon which the signature is based **still** does not exist, and the Void Assignment is therefore **still** categorized as a forgery under Michigan law which is void as opposed to merely voidable, and cannot

8

form a record chain of title for foreclosure.

53.   This fact, standing alone, invalidates the foreclosure proceedings.

54.   In addition to the foregoing, the 2nd Void Assignment is void for the same reasons as the 1st Void Assignment, i.e. the signatures on the document themselves are forgeries and/or computer generated cut and pastes of electronically stored "signatures".

55.   In the alternative, even if the signatures of both the signor, and notary, are authentic and not forgeries or computer generated cut and pastes by an overworked robo-signing operation, the stated authority upon which the signature is based **still** does not exist, and the Void Assignment is therefore **still** categorized as a forgery under Michigan law, which is void as opposed to merely voidable, and cannot form a record chain of title for foreclosure.  is void as opposed to merely voidable, and cannot form a record chain of title for foreclosure.

56.   In addition, upon information and belief, the ownership and/or possession of the Mortgage and the Note have been severed, such that neither Bank of America nor US Bank, nor any other person or entity has the authority to foreclose upon the Property.

57.   This fact, standing alone, invalidates the foreclosure proceedings.

58.   In addition, upon information and belief, neither Bank of America nor US Bank is the holder of the Note, or was the holder of the Note at the time foreclosure proceedings were commenced. Upon information and belief, neither Bank of America nor US Bank owns the Loan, or was the owner of the Loan at the time foreclosure proceedings were commenced.

59.   This fact, standing alone, invalidates the foreclosure proceedings.

60.   Plaintiff has suffered damages as a result of Defendants' misconduct, as more fully set forth above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment in his favor and against Defendants, jointly and severally, granting the following relief:

A.    Enter a Temporary Restraining Order preserving the status quo, by restraining and enjoining the sheriff's sale of the Property, pending a hearing relative to Plaintiff's request for a Preliminary and/or Permanent Injunction seeking the same relief through trial;

B.    Order Defendants to pay any/all damages incurred by Plaintiff, as a proximate result of the above-referenced misconduct;

C.    In the alternative to the foregoing, convert the instant action to a judicial foreclosure;

D.    An award of actual costs, including reasonable attorney fees, so wrongfully incurred; and

E.    An award of any and all further relief deemed equitable and just under the circumstances.

## COUNT 2 – MI FORECLOSURE BY ADVERTISEMENT STATUTE

61.    Plaintiff hereby adopts and incorporates by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

62.    Michigan's foreclosure by advertisement statute, Mich. Comp. Laws § 600.3204, requires as follows:

> (4) A party shall not commence proceedings under this chapter to foreclose a mortgage of property described in section 3205a(1) if 1 or more of the following apply:
>
> (f) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

63.    As set forth in the Common Allegations above, Plaintiff's request for modification was denied, allegedly because Plaintiff did not qualify.

64.    In reality however, the reason for the denial had nothing to do with Plaintiff's eligibility for modification, and everything to do with the incredible Defendants would get from a bailout or by cashing in on a private mortgage insurance policy.

65.    Plaintiff did, in fact, qualify for HAMP, traditional or in-house, and other loan modification programs which Bank of America participates in, and Bank of America knew it.

10

66.     Pursuant to both the above-quoted provisions of Mich. Comp. Laws § 600.3204, and Mich. Comp. Laws § 600.3205c(7), if a mortgagor qualifies for modification, but the foreclosing entity does not wish to grant the same, the foreclosing entity loses the right to a cheap and easy foreclosure by advertisement, and is strictly required to file an expensive and time-consuming lawsuit against the mortgagor for judicial foreclosure.

67.     Given that Plaintiff qualified for modification, Bank of America never should have scheduled a sheriff's sale.

68.     Notwithstanding all of the above, Bank of America proceeded with an illegal non-judicial foreclosure of the Mortgage by advertisement, and a sheriff's sale is currently scheduled for this Thursday, May 11, 2012, in violation of both the Michigan foreclosure statute, and the Statutory Modification Laws, absent injunctive relief by this Honorable Court.

69.     Plaintiff has suffered damages as a result of Defendants' above-referenced misconduct.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment in his favor and against Defendants, jointly and severally, granting the following relief:

A.      Enter a Temporary Restraining Order preserving the status quo, by restraining and enjoining the sheriff's sale of the Property, pending a hearing relative to Plaintiff's request for a Preliminary and/or Permanent Injunction seeking the same relief through trial;

B.      Order Defendants to pay any/all damages incurred by Plaintiff, as a proximate result of the above-referenced misconduct;

C.      In the alternative to the foregoing, convert the instant action to a judicial foreclosure;

D.      An award of actual costs, including reasonable attorney fees, so wrongfully incurred; and

E.      An award of any and all further relief deemed equitable and just under the circumstances.

## COUNT 3 – MI STATUTORY MODIFICATION LAW

70.     Plaintiff hereby adopts and incorporates by reference each and every allegation contained

11

in the above Paragraphs, as if fully set forth herein.

71.     As a condition precedent to the commencement of foreclosure by advertisement and/or judicial foreclosure, the foreclosing entity must comply with Mich. Comp. Laws § 600.3205a through c.

72.     Mich. Comp. Laws § 600.3205a(1)(c) requires that the foreclosing entity designate a person authorized to enter into loan modification agreements, and notify the borrower of the identity of such person, such that the borrower may contact that person and attempt to work out a loan modification.

73.     In fact, the only party with authority to modify the borrowers' loan is the investor who purportedly owns the loan, being US Bank, yet US Bank was **not** present for the meeting.

74.     This failure, standing alone, constitutes a failure of condition precedent that precludes foreclosure in this case, and no foreclosure may occur unless and until the foreclosing entity begins the foreclosure process anew, and properly identifies the person identified to grant loan modifications in accordance with Mich. Comp. Laws § 600.3205a(1)(c).

75.     This failure, standing alone, constitutes yet another failure of condition precedent that precludes foreclosure in this case, and no foreclosure may occur unless and until the foreclosing entity begins the foreclosure process anew, and ensures that US Bank representatives personally participate in the meeting required by Mich. Comp. Laws § 600.3205c.

76.     In addition to the foregoing, Mich. Comp. Laws § 600.3205c requires as a condition precedent to foreclosure that the person authorized to make loan modifications shall work with the borrower to determine whether the borrower qualifies for a loan modification.

77.     The reason for this requirement is identical to the reason courts, such as this Honorable Court, require persons with full settlement authority to appear at settlement conferences, and heavily sanction parties who fail to comply with this requirement.

78.     Defendants have failed to satisfy this condition precedent, by engaging in meetings with the borrower to determine if the borrower qualifies for loan modification without the presence and/or

input of any person who is actually authorized to grant a loan modification.

79.     Specifically, the only representatives of the foreclosing law firm who participated in the meeting to determine whether the borrower was eligible for modification were representatives of the foreclosing law firm, and representatives of the servicing agent, neither of which had any authority to modify the borrower's loan.

80.     In fact, the only party with authority to modify the borrowers' loan is the investor who owns the loan, yet the investor was **not** present for the meeting.

81.     This failure, standing alone, constitutes yet another failure of condition precedent that precludes foreclosure in this case, and no foreclosure may occur unless and until the foreclosing entity begins the foreclosure process anew, and ensures that the investor that owns the loan personally participates in the meeting required by Mich. Comp. Laws § 600.3205c.

82.     Finally, Mich. Comp. Laws § 600.3205c requires that "if the results of the calculation under subsection (1) are that the borrower is eligible for a modification, the mortgage holder or mortgage servicer shall not foreclose the mortgage under this chapter but may proceed under chapter 31."

83.     In other words, as set forth in Count 2 above, if a homeowner qualifies for modification, but the lender does not wish to grant the same, Mich. Comp. Laws § 600.3205c makes it clear that foreclosure by advertisement and auction sale to the highest bidder is no longer an option under Michigan law, and any further foreclosure activity must be conducted judicially.

84.     Plaintiff qualified for modification, and Bank of America knew it, but Defendants did not want to modify Plaintiffs' loan, nor did Defendants wish to comply with their obligation under the law to conduct a **lengthy and expensive** judicial foreclosure.

85.     Accordingly, Defendants instructed the foreclosing law firm to proceed with non-judicial foreclosure by advertisement, in violation of the Statutory Modification Laws.

86.     This failure, standing alone, supports Plaintiff' request for a Temporary Restraining Order

13

and Preliminary Injunction after hearing, preserving the status quo by preventing the illegal foreclosure by advertisement of the Property, in violation of both Mich. Comp. Laws § 600.3204 and § 600.3205c.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment in his favor and against Defendants, jointly and severally, granting the following relief:

A.  Enter a Temporary Restraining Order preserving the status quo, by restraining and enjoining the sheriff's sale of the Property, pending a hearing relative to Plaintiff's request for a Preliminary and/or Permanent Injunction seeking the same relief through trial;

B.  Order Defendants to pay any/all damages incurred by Plaintiff, as a proximate result of the above-referenced misconduct;

C.  In the alternative to the foregoing, convert the instant action to a judicial foreclosure;

D.  An award of actual costs, including reasonable attorney fees, so wrongfully incurred; and

E.  An award of any and all further relief deemed equitable and just under the circumstances.

## COUNT 4 – DECLARATORY RELIEF – FORECLOSURE BARRED BY UNCLEAN HANDS

87.  Plaintiff hereby adopts and incorporates by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

88.  Foreclosure is both a contractual and equitable form of relief, and is therefore not a valid course of action for any foreclosing entity which commences foreclosure proceedings in bad faith, or with unclean hands.

89.  Defendants' above-referenced conduct constitutes multiple instances of bad faith negotiations with Plaintiff, as well as bad faith processing of his mortgage loan and/or request for modification.

90.  Although Defendants seek the equitable relief of foreclosure, Defendants cannot make the requisite showing of clean hands in order to obtain such relief.

91.     As a result of Defendants' acts of bad faith, Defendants are not entitled to the equitable relief of foreclosure.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment in his favor and against Defendants, jointly and severally, granting the following relief:

A.     Enter a Temporary Restraining Order preserving the status quo, by restraining and enjoining the sheriff's sale of the Property, pending a hearing relative to Plaintiff's request for a Preliminary and/or Permanent Injunction seeking the same relief through trial;

B.     Order Defendants to pay any/all damages incurred by Plaintiff, as a proximate result of the above-referenced misconduct;

C.     In the alternative to the foregoing, convert the instant action to a judicial foreclosure;

D.     An award of actual costs, including reasonable attorney fees, so wrongfully incurred; and

E.     An award of any and all further relief deemed equitable and just under the circumstances.

## COUNT 5 – BREACH OF CONTRACT -
## IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

92.     Plaintiff hereby adopts and incorporates by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

93.     Michigan courts recognize a duty of good faith in a contractual relationship where a party is given discretion to make a determination under the contract.

94.     In the instant action, as described above, Defendants had the discretion to modify Plaintiff's loan in accordance with HAMP and/or other loss mitigation programs.

95.     Defendants' conduct as described in this Complaint constitutes multiple breaches of its duty of good faith and fair dealing.

96.     As a result of Defendants' breach of the implied covenant of good faith and fair dealing in the pre-foreclosure loss mitigation period, Plaintiff has suffered damages.

15

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment in his favor and against Defendants, jointly and severally, granting the following relief:

A.  Enter a Temporary Restraining Order preserving the status quo, by restraining and enjoining the foreclosure auction sale of the Property, pending a hearing relative to Plaintiff's request for a Preliminary and/or Permanent Injunction seeking the same relief through trial;

B.  Order Defendants to pay any/all damages incurred by Plaintiff, as a proximate result of their above-referenced misconduct;

C.  An award of actual costs, including reasonable attorney fees, so wrongfully incurred; and

D.  An award of any and all further relief deemed equitable and just under the circumstances.

## COUNT 6 – FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

97.  Plaintiff hereby adopts and incorporates by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

98.  Because there never was a valid assignment of the Note and the Mortgage to Defendants, Bank of America was not collecting on its own debt.  Because Bank of America was not collecting on its own debt, it was acting as a debt collector within the meaning of the Fair Debt Collection Practices Act.

99.  Bank of America is a debt collector within the meaning of the FDCPA because Bank of America regularly uses the mail and/or telephone to collect, or attempt to collect, delinquent consumer debts; Defendant's telephone messages and correspondence at all times relevant to this Complaint include the message (or a message substantially similar) that Bank of America "is a debt collector and any information obtained will be used for that purpose;" and Bank of America regularly attempts to collect defaulted consumer mortgage debts from consumers in Michigan by attempting to effect loss mitigation efforts with consumers who have defaulted on their mortgage loans.

100.  Bank of America has engaged in multiple violations of the FDCPA against Plaintiff, including but not limited to the following:

16

a.   Defendant failed to properly and completely give the validation notice required by 15 U.S.C. § 1692g.

b.   Misrepresentations to the borrower about the terms of the alleged debt, including but not limited to the amount due;

c.   Defendant's false threat to initiate legal action violates 15 U.S.C. § 1692e(5); and

d.   Defendant's communication with Plaintiffs after being notified that Plaintiffs was represented by an attorney violates 15 U.S.C. § 1692c(a)(2).

101.   As a result of Bank of America's violations of the FDCPA, Plaintiff has suffered actual damages, including emotional distress, and is also entitled to an award of statutory damages, costs, and attorney fees.

WHEREFORE Plaintiff respectfully requests that this Honorable Court enter a Judgment in his favor and against Bank of America, granting the following relief:

A.   Enter a Temporary Restraining Order preserving the status quo, by restraining and enjoining the foreclosure auction sale of the Property, pending a hearing relative to Plaintiff's request for a Preliminary and/or Permanent Injunction seeking the same relief through trial;

B.   Order Bank of America to pay any/all damages incurred by Plaintiff, as a proximate result of their above-referenced misconduct;

C.   Award Plaintiff additional damages of $1,000 for each violation of the Fair Debt Collection Practices Act.

D.   Order Bank of America to pay Plaintiff's costs, including attorney fees as authorized by the Fair Debt Collection Practices Act; and

E.   An award of any and all further relief deemed equitable and just under the circumstances.

## COUNT 7 – MI FAIR DEBT COLLECTION PRACTICES ACT

102.   Plaintiff hereby adopts and incorporates by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

103.    Bank of America's above-referenced conduct constitutes multiple violations of the Michigan Occupation Code, and more specifically Mich. Comp. Laws § 339.918, entitled Communication with Consumer; Notice; Effect of Disputing Validity of Debt; Verification of Debt; Failure to Dispute Validity of Debt.

104.    Bank of America's violations include, but are not limited to, the following:

a.    Defendant failed to properly and completely give the validation notice required by Mich. Comp. Laws § 339.918;

b.    Defendant's false threat to initiate legal action violates Mich. Comp. Laws § 339.915(e); and

c.    Defendant's communication with Plaintiffs after being notified that Plaintiffs were represented by an attorney violates Mich. Comp. Laws § 339.915(h).

105.    As a result of Bank of America's willful violations of the State Act, Plaintiff has suffered actual damages, including emotional distress, and is entitled to an award of treble damages, statutory damages, costs, and attorney fees.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment in his favor and against Bank of America, granting the following relief:

A.    Enter a Temporary Restraining Order preserving the status quo, by restraining and enjoining the foreclosure auction sale of the Property, pending a hearing relative to Plaintiff's request for a Preliminary and/or Permanent Injunction seeking the same relief through trial;

B.    Award Plaintiff actual damages and statutory damages of $1,000 pursuant to the FDCPA;

C.    Award Plaintiff treble damages, or $150, whichever is greater, pursuant to the FDCPA;

D.    Award Plaintiff costs and reasonable attorney fees pursuant to Mich. Comp. Laws § 339.916(2); and

E.    An award of any and all further relief deemed equitable and just under the circumstances.

## COUNT 8 – ACCOUNTING

106.   Plaintiff hereby adopts and incorporates by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

107.   As more fully set forth in the Common Allegations above, Defendants have muddled the foreclosure process by fraudulently inflating escrow costs, and by accepting payments from Plaintiff without crediting the same to his account, before commencing foreclosure proceedings against him.

108.   As a result of the foregoing, Defendants owe Plaintiff the obligation to account for any/all payments made by Plaintiff but not credited to his account, as well as any unjustifiable escrow costs, in order to provide a basis for the amount claimed to be due and owing in order to make a reinstatement payment to avoid foreclosure.

109.   Plaintiff cannot, even with liberal discovery, reasonably be expected to ascertain and determine what the real amount required to reinstate his mortgage, and prevent foreclosure, would be.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment in his favor and against Defendants, jointly and severally, granting the following relief:

A.   Enter a Temporary Restraining Order preserving the status quo, by restraining and enjoining the foreclosure auction sale of the Property, pending a hearing relative to Plaintiff's request for a Preliminary and/or Permanent Injunction seeking the same relief through trial;

B.   Enter an Order compelling Defendants to prepare, at its sole expense, a true and accurate accounting of all of activities relative to Plaintiff's account, including but not limited to an accounting of any/all trial period/forbearance payments made based on Defendants' promise to grant a permanent loan modification in the event the trial period/forbearance payments were made in a timely fashion.

C.   Order Defendants to pay any/all damages incurred by Plaintiff, as a proximate result of their above-referenced misconduct;

D.   Order Defendants to pay Plaintiff's costs, including attorney fees so wrongfully incurred;

19

and

E.     Grant Plaintiff any such other and further relief as the Court deems just and fair.

**I SWEAR OR AFFIRM THAT THE ABOVE-STATED ALLEGATIONS ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.**

Dated: May 8, 2012

Scott Foster

Respectfully submitted:

GANTZ ASSOCIATES

**RECEIVED**

MAY  9 2012

CARMELLA SABAUGH
MACOMB COUNTY CLERK

By: _____

ADAM J. GANTZ (P58558)
NICKOLAS C. BUONODONO (P70835)
Counsel for Plaintiffs

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury trial in the instant action.

Respectfully submitted:

GANTZ ASSOCIATES

Dated: May 8, 2012

By: _____

ADAM J. GANTZ (P58558)
NICKOLAS C. BUONODONO (P70835)
Counsel for Plaintiffs

# EXHIBIT "A"

RECEIVED

MAY 9 2012

CARMELLA SABAUGH
MACOMB COUNTY CLERK

REC'D NOV 1 5 2006 9²⁰ Am

Franklin Title



6177250
LIBER 18308 PAGE 786

11/15/2006 02:53:09 P.M.
MACOMB COUNTY, MI          SEAL
CARMELLA SABAUGH, REGISTER OF DEEDS

---

[Space Above This Line For Recording Data]

# MORTGAGE

MIN: 100425240010787536

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated     October 27, 2006     , together with all Riders to this document.

(B) "Borrower" is SCOTT FOSTER A SINGLE MAN

Borrower's address is 27021 HICKLER LN , HARRISON TOWNSHIP, MI 48045

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is FIRST FRANKLIN A DIVISION OF NATIONAL CITY BANK
Lender is a National Association                                                         organized and existing under
the laws of United States of America                                                    . Lender's address is
2150 NORTH FIRST STREET, SAN JOSE, California 95131

(E) "Note" means the promissory note signed by Borrower and dated     October 27, 2006     . The Note states that Borrower owes Lender Eighty Thousand and no/100
                              Dollars (U.S. $80,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 01, 2036

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

MICHIGAN—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3023 1/01
ITEM 9921L1 (0402)—MERS MFM13115                    (Page 1 of 12 pages)          4001076753 GreatDocs™
                                                                                  To Order Call 1-800-968-5775

IIaw   53057                                           SF                    59

Liber 018308 Page 00787

**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider

[ ] Balloon Rider    [ ] Planned Unit Development Rider    [X] Other(s) [specify] Prepay Rider

[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Liber 018308 Page 00788

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **COUNTY** of **MACOMB** :
              [Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

LOT 135, LAKESIDE GARDENS, ACCORDING TO THE RECORDED PLAT THEREOF AS RECORDED IN LIBER 2 ON PAGE 233 OF PLATS, MACOMB COUNTY RECORDS.

which currently has the address of                   **27021 HICKLER LN**
                                                          [Street]

**HARRISON TOWNSHIP**       , Michigan        **48045**        ("Property Address"):
         [City]                                       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or

MICHIGAN—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3023 1/01

ITEM 9923L3 (0402)—MERS MFM13115                        (Page 3 of 12 pages)                        4001076753 GreatDocs™
                                                                                                    To Order Call 1-800-968-5775

Liber 018308 Page 00789

partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

MICHIGAN—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 9623L4 (0402)—MERS MFMI3115

(Page 4 of 12 pages)

Form 3023 1/01

4001078753 GreatDocs™
To Order Call 1-800-968-5775

Liber 018308 Page 00790

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.

MICHIGAN—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                     Form 3023 1/01

ITEM 9923L5 (0402)—MERSMFMI3115                    (Page 5 of 12 pages)                    4001078753 GreatDocs™
                                                                                          To Order Call 1-800-968-5775

SF

Liber 018308 Page 00791

Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

MICHIGAN—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3023 1/01

ITEM 9923L6 (0402)—MERS MFMI3115                          (Page 6 of 12 pages)              SF          400107875.3  GreatDocs™
                                                                                                      To Order Call 1-800-968-5775

Liber 018308 Page 00792

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

SF

Liber 018308 Page 00793

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan

Liber 018308 Page 00794

charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.   Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.   Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.   Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18.   Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.   Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,

instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.   Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.   Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.   Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice,

MICHIGAN—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 9923L10 (0402)—MERSMFMI3115

(Page 10 of 12 pages)

Form 3023 1/01

GREATDOCS™
4001078753 GreatDocs™
To Order Call: 1-800-968-5775

Liber 018308 Page 00796

Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23.   Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)                              _____ (Seal)
SCOTT FOSTER                 -Borrower                                                      -Borrower

_____ (Seal)                              _____ (Seal)
                             -Borrower                                                      -Borrower

_____ (Seal)                              _____ (Seal)
                             -Borrower                                                      -Borrower

Witness:                                                        Witness:

_____                                    _____

MICHIGAN—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3023 1/01

ITEM 9923L11 (0402)—MERSMFMI3115          (Page 11 of 12 pages)          4001078763 GreatDocs™
                                                                        To Order Call: 1-800-968-5775

Liber 018308 Page 00797

State of Michigan
County of   Macomb

The foregoing Instrument was acknowledged before me this       October 27, 2006       (date) by
SCOTT FOSTER , a single man

(name of person[s] acknowledged).

_____
Notary Public

County, Michigan.

TAMARA L. TERMINI
Notary Public, State of Michigan
Macomb County
Acting in ..... MACOMB County
My Commission Expires Oct 8, 2012

Acting in the County of


My commission expires:


This instrument was prepared by:

Name:            SHERRY PAULUS
Business Address:   FIRST FRANKLIN
                 33533 W. 12 MILE ROAD, SUITE 290, FARMINGTON HILLS,
                 MI 48331


After Recording Return To:

FIRST FRANKLIN
c/o SECURITY CONNECTIONS
1935 INTERNATIONAL WAY
IDAHO FALLS, ID 83402

Liber 018308 Page 00798

# ADJUSTABLE RATE RIDER
### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this      27th      day of      October 2006
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
FIRST FRANKLIN  A DIVISION OF NATIONAL CITY BANK
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**27021 HICKLER LN**
**HARRISON TOWNSHIP, MI 48045**
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of      8.6000 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)  Change Dates
The interest rate I will pay may change on the first day of      November 2009      ,
and on that day every      6th      month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  Five and Four Tenths
percentage points (      5.4000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL) -- Single Family
ITEM 840741.1 (C57311L) (9610)    MFCD8053                (Page 1 of 3 pages)

4001078753                    GREATLAND ■
To Order Call: 1-800-530-9393 □Fax 616-791-1131



Liber 018308 Page 00799

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)   Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than      11.6000 % or less than      8.6000 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One
percentage point(s) (      1.0000 %) from the rate of interest I have been paying for the preceding       6      months; subject to the following limits: My interest rate will never be greater than      14.6000 %, nor less than      8.6000 %.

(E)   Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)   Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Liber 018308 Page 00800

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
SCOTT FOSTER                    -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

*[Sign Original Only]*

MFCD8053
640741I3                        (Page 3 of 3 pages)                    4001076753

Liber 018308 Page 00801

# PREPAYMENT RIDER

This Prepayment Rider is made this 27th day of October 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or the Security Deed (the "Security Instrument") of the same date given by the undersigned ( the "Borrower" ) to secure Borrower's Note ( the "Note" ) to
FIRST FRANKLIN  A DIVISION OF NATIONAL CITY BANK
("the Lender") of the same date and covering the property described in the Security Instrument and located at:
27021 HICKLER LN
HARRISON TOWNSHIP, MI 48045

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower can make a partial prepayment at anytime without paying any charge. Borrower may make a full prepayment at anytime subject to a prepayment charge as follows:

If within the first 36 months after the date Borrower executes the Note, Borrower makes a full prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note), Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge not to exceed:

- 3 percent of the unpaid principal balance if the loan is prepaid within the first year.
- 1 percent of the unpaid principal balance if the loan is prepaid within the second year.
- 1 percent of the unpaid principal balance if the loan is prepaid within the third year.
- 0 percent of the unpaid principal balance if the loan is prepaid within the fourth year.
- 0 percent of the unpaid principal balance if the loan is prepaid within the fifth year.

### NOTICE TO BORROWER

Do not sign this Prepayment Rider before you read it. This Loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)        _____ (Seal)
SCOTT FOSTER                  -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                                      -Borrower

Adjustable Rate Prepayment Rider - 1st Liens - AR, IL, IN, KY, MI, MS & OH
Fixed Rate and Balloon Prepayment Rider - 1st Liens – AR, IL, IN, KY & MS
MFCD6035
FF008710

4001078753

# EXHIBIT "B"

RECD MACOMB CO *11 NOV 21 PH 1254

1234192
LIBER 21022 PAGE 262
12/08/2011 08:57:21 AM
Macomb County, MI
Carmella Sabaugh, Clerk/Register of Deeds            SEAL
Receipt # 44907

DocID# 1123370186485261

Property Address:
27021 Hickler Ln
Harrison Township, MI 48045-2555
HMV2-AM 14973255     11/10/2011

| Recording Requested By: | When recorded mail to: |
|---|---|
| Bank of America | CoreLogic |
| Prepared By: | 450 E. Boundary St. |
| Danilo Cuenca | Attn: Release Dept. |
| 888-603-9011 | Chapin, SC 29036 |
| 450 E. Boundary St. | |
| Chapin, SC 29036 | |

This space for Recorder's use

MIN #: 1004252400010787536          MERS Phone #: 888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto U.S. BANK, NATIONAL ASSOCIATION, SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A., AS SUCCESSOR TRUSTEE TO LASALLE BANK, N.A. AS TRUSTEE FOR THE HOLDERS OF THE FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN   ASSET-BACKED CERTIFICATES, SERIES 2006-FF18 whose address is 60 LIVINGSTON AVE, ST. PAUL, MI 55107 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Original Lender: | FIRST FRANKLIN A DIVISION OF NATIONAL CITY BANK |
| Borrower(s): | SCOTT FOSTER A SINGLE MAN |
| Date of Mortgage: | 10/27/2006 |
| Original Loan Amount: | $80,000.00 |

Recorded in Macomb County, MI on: 11/15/2006, book 18308, page 786 and Instrument number 6177250

Property Legal Description:
NA

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
11/10/2011

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____

Dominique Johnson Assistant Secretary

State of California
County of Ventura

On NOV 10 2011 before me, Deborah L Beard, Notary Public, personally appeared Dominique Johnson, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Deborah L Beard          (Seal)
My Commission Expires: JUN 2 6 2013

DEBORAH L. BEARD
Commission # 1853913
Notary Public - California
Ventura County
My Comm. Expires Jun 26, 2013

# EXHIBIT "C"

| 12-02-2011 | #79 |
|---|---|

**BofA_hater** °
Senior Member



LoanSafe.org
Member

Join Date: Jun 2011
Posts: 30

OK, so here's my list of suspects. These are "Assistant Secretaries" or "Vice Presidents", signing officers for MERS who actually work for various banks. Most of these are BAC I believe. They are dumping assignments on the counties in huge numbers, usually "sign" with some scribbled initials and supposedly assign from MERS to BAC/Bank of America/Countrywide (in other words, generating lots of invalid assignments). Are they robosigners? Well, it depends on your definition, but these folks are cranking hundreds-thousands of assignments out, mainly for foreclosure purposes, are located in CA while MERS is in FL. There is some good info also available on salemdeeds.com, and a very interesting analysis on there as well by an analytical firm assessing the number of fraudulent assignments in that county. There is also a different robosigner list on there, mostly from pre-2011 but still worth a read. The ones I list below are mostly from 2011 assignments.

Bud Kamyabi
Miguel Romero
Lisa Nix
Christopher Herrera
Valerie White
Luis Roldan
Richard Paz
Mary Ann Hierman
Edward Gallegos
Yolanda Rodriguez
Alicia Row
Martha Munoz
Cynthia Santos
Debbie Nieblas
Monica Zepeda
Swarupa Slee
Kathy Ornard
Dominique Johnson
Lariza Post
Diane Phani
Barbara Nord
Ricki Aguilar
Trisha Jackson
Maria Medina Rodriguez

Reply With Quote

| 12-02-2011 | #80 |
|---|---|

**calgirl67** °
Senior Member

Join Date: Sep 2009
Posts: 642

Add AMY TOSKE to that list. I have found documents signed by her in this capacity:

Vice President Loan Documentation Wells Fargo
Assistant Secretary MERS
Notary Public in Minnesota

Last payment December 2009......

Reply With Quote

| 12-02-2011 | #81 |
|---|---|

**hibiscus** °
Senior Member



LoanSafe.org
Member

Join Date: Sep 2011
Location: California
Posts: 124

Hi BofA Hater,

> Originally Posted by BofA_hater ▣
> Hi everybody. I've been doing a bit of research, chasing down a robosigner on my documents. I've found that the new robosigners out of Ventura County, CA (Romero, Herrera, Kamyabi) tend to be realtors as well. Busy folks I guess, working as VPs/Secretaries for MERS (in FL supposedly), then rushing back to CA to work for BAC, meanwhile selling/stealing foreclosed homes on the side, I guess. I guess it would be too much to hope for that these robosigning sleazebags wind up in jail, though if the Nevada AG has her way, at least some of them might

I was wondering, when you say some of the Robosigners (Kamyabi) are realtors too, Do you mean in CA or NV?

Reply With Quote

| 12-02-2011 | #82 |
|---|---|

**freedomwon** °
Senior Member

Join Date: Oct 2010
Location: California
Posts: 2,298

**hibiscus** - nice to see you back! It's been about a month. Hope all is o.k. with you.

**Calgirl67** - Hop over to my recent letter to BofA thread. Hibiscus has a post over there relevant to your case & I immediately thought of you!

28. **Shelley A. Erickson**, on August 26, 2011 at 12:38 am said:

I have dirt on Malik Basurto assist sec of MERS and the nortary is on two dif docs and both docs have two very very dif signatures for both Malik and Shannon Steeg the notary whom are together on the two pierce county doc from Washington. Also the pretend assist sec of MERS Dominique Johnson and the notary Deborah L. Beard are together on two dif docs and both of the two with totally dif signatures and all in May, June and August of 2011. Recently done. Proof of perjury, and fraud.

Comment by Colleen Burback on December 25, 2011 at 1:17pm

I have scanned documents with Dominique Johnson as asst secretary to MERS and Deborah L. Beard notary. Email me at the.burback.bunch@gmail.com to compare signatures with your docs.

3. *Shelley A. Erickson* says:
   August 26, 2011 at 2:39 AM

   If anyone wants dirt on Dominique Johnson as a secretary of MERS I have it two totally different signatures stating they are the same person and the same notary declaring they are when they obviously are not. THe noptary is Deborah L. Beard

   Report this comment

   00
   Rate this

   - *Colleen Burback* says:
     September 28, 2011 at 7:57 PM

     Shelley,
     I need your help, if you have any information on this "Dominique Johnson" and Deborah L. Beard, please send it to me at the.burback.bunch@gmail.com. I filed a QWR letter to the supposed owner of our note, and requested the promissory note, and other documents, and all of a sudden, in our county judge of probate is a "assignment of mortgage" with these 2 very names that you have on yours, and the signatures dont match from page to page. Please help, any info will be appreciated!

     Report this comment

     00
     Rate this

     - *Colleen Burback* says:
       December 25, 2011 at 12:28 PM

       Merry Christmas everyone! I have scanned in my documents with Deborah L. Beard as Notary in California, and Dominique Johnson, Asst Secretary to MERS, both dated July 15th, 2011...so the fraud continues even though Robo signers list has been made public. If you want a copy to compare signatures with your documents, please email me at the.burback.bunch@gmail.com. Thanks!!

       Report this comment

       00
       Rate this

   - *Robin Heizenrader* says:
     October 11, 2011 at 1:32 PM

     Hi Shelley

I am facing a forclosure with Bank of America who has sent me documents signed by a robo signer named S. Slee I just started inquiring about this DSeborah L. Beard and would appreciate anything you can send me on her.

Thank You

Robin

<u>Report this comment</u>

00
Rate this



*Colleen Burback* says:
<u>December 25, 2011 at 12:32 PM</u>

I also have contact information for Deborah Beard, and she is running scared! I called her and she played dumb, but she called me back a few days later and said that if I send her a written request she would send copies of her daily entries that she has to keep for the State of CA as a notary....but here is her info:

Deborah L. Beard

308 Green Moore Place

Thousand Oaks, CA 91361

818.421.7078

<u>Report this comment</u>

00
Rate this



*Colleen Burback* says:
<u>December 25, 2011 at 12:34 PM</u>

Shelley, Can you please send me your copies of these 2 crooks' signatures to my email at <u>the.burback.bunch@gmail.com</u>. I can send you my copies as well so that we can compare signatures.
Thank you

Colleen

<u>Report this comment</u>

00
Rate this

4.   *chunga* says:
<u>August 25, 2011 at 9:29 AM</u>

Pick up the phone and call Miller.

1305 E. Walnut Street
Des Moines IA 50319
Phone: 515-281-5164
Fax: 515-281-4209

<u>webteam@ag.state.ia.us</u>

<u>Report this comment</u>

# EXHIBIT "D"

2017096
LIBER 21116   PAGE 306
02/13/2012  08:31:28 AM
Macomb County, MI                    SEAL
Carmella Sabaugh, Clerk/Register of Deeds
Receipt # 5984

RECD MACOMB CO #12JAN23PM0203

## ASSIGNMENT OF MORTGAGE

Foster, Scott                                    T&T # 389359F01

U.S. Bank National Association, Successor Trustee to Bank of America N.A. Successor Trustee to LaSalle Bank N.A. Trustee for the Holders of the First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-FF-18, 60 Livingston Ave, Saint Paul, MN 55107-2292, for value received, assigns and transfers to: U.S. Bank National Association, Successor Trustee to Bank of America N.A. Successor Trustee to LaSalle Bank N.A. Trustee for the Holders of the Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-FF-18, 400 Countrywide Way, Simi Valley, CA 93065-6298, all its right, title and interest in and to a certain real estate mortgage made by Scott Foster, a single man, original mortgagor(s), to Mortgage Electronic Registration Systems, Inc., Mortgagee, dated October 27, 2006, and recorded on November 15, 2006 in Liber 18308 on Page 786, in Macomb County records, Michigan.

Dated: January 11, 2012

In the presence of:                              Signed:

Judy Pack                                        U.S. Bank National Association, Successor Trustee to Bank
                                                 of America N.A. Successor Trustee to LaSalle Bank N.A.
Judy Pack                                        Trustee for the Holders of the First Franklin Mortgage Loan
                                                 Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-
                                                 FF-18 By Bank of America, N.A. (BANA), Attorney
                                                 in Fact

                                                 By _Price_
                                                    Sheniqua N. Price

                                                 Its Assistant Vice President (AVP)

STATE OF Texas        )
                      )SS.
COUNTY OF Dallas      )
This instrument was acknowledged before me in Dallas County, State of Texas, on this 11th day
of January 2012 by Sheniqua N. Price  its AVP of BANA, attorney in Fact, on behalf of
U.S. Bank National Association, Successor Trustee to Bank of America N.A. Successor Trustee to LaSalle Bank
N.A. Trustee for the Holders of the First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates,
Series 2006-FF-18, for the corporation.

[SEAL: SACHE N. KEETON
My Commission Expires
February 11, 2013]

_Sache N. Keeton_, Notary public
State of Texas, County of Dallas
My commission expires 2/11/13
Acting in the County of Dallas

| When Recorded Return To: | Drafted by: Marcy J. Ford |
|---|---|
| Trott & Trott, P.C. | Trott & Trott, P.C. |
| 31440 Northwestern Highway, Suite 200 | 31440 Northwestern Highway, Suite 200 |
| Farmington Hills, MI 48334-2525 | Farmington Hills, MI 48334-2525 |

Charter Township of Harrison:
Legal Description:
Lot 135, Lakeside Gardens, according to the recorded Plat thereof as recorded in Liber 2, on Page 233 of Plats,
Macomb County Records.

Tax Parcel No. 17-12-30-203-028

Property Address
27021 Hickler Ln
Harrison Township, MI 48045-2555

# EXHIBIT "E"

ELECTRONICALLY RECORDED  201200000076
01/03/2012 09:08:54 AM APP  1/1

20090031416799
1816 DUDLEY AVENUE
DALLAS, TEXAS 75203

APPOINTMENT OF SUBSTITUTE TRUSTEE

DEED OF TRUST

DATED: September 26, 2005

CRANSTON ALKEBULAN

RECORDED IN:          CLERK'S FILE NO. 200503585296

PROPERTY COUNTY:   DALLAS

The undersigned as mortgagee, or as mortgage servicer for the mortgagee under Texas Property Code Sec. 51.0075, does hereby remove the original Trustee and all successor substitute trustees and appoints in their stead R. MARIS, L. PATTON, M. LINDSEY OR R. FORSTER as Substitute Trustee, who shall hereafter exercise all powers and duties set aside to the said original Trustee under the said Deed of Trust; and, further, does hereby request, authorize, and instruct said Substitute Trustee to conduct and direct the execution of remedies set aside to the beneficiary therein.

Executed on                        HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR THE
                                   CERTIFICATEHOLDERS FOR THE DEUTSCHE ALT-A SECURITIES, INC., MORTGAGE
12-05-2011                         PASS-THROUGH CERTIFICATES, SERIES 2005-6
                                   by Countrywide Home Loans, Inc. (CHL), attorney in fact

                                   BY: _____
                                       Oleg Shvorob
                                       Assistant Vice President (AVP)

CORPORATE ACKNOWLEDGEMENT

STATE OF TEXAS
COUNTY OF DALLAS

Before me, the undersigned Notary Public, on this day personally appeared Oleg Shvorob, who is the AVP of CHL attorney in fact on behalf of HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE, FOR THE CERTIFICATEHOLDERS FOR THE DEUTSCHE ALT-A SECURITIES, INC., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-6, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this  5th  day of  December , 2011

                                   _____
                                   Notary Public for the State of Texas

My Commission Expires:

2/11/13

                                   Sache N Keeton
                                   Printed Name of Notary Public

SACHE N. KEETON
My Commission Expires
February 11, 2013

Filed and Recorded
Official Public Records
John F. Warren, County Clerk
Dallas County, TEXAS
01/03/2012 09:08:54 AM
$16.00
201200000076

RETURN TO:
   BARRETT DAFFIN FRAPPIER
   TURNER & ENGEL, LLP
   15000 Surveyor Boulevard, Suite 100
   Addison, Texas  75001
   Appt_net.rpt - Conventional  (05/27/2011) Ver-33

**STATE OF MICHIGAN**
**IN THE MACOMB COUNTY CIRCUIT COURT**

SCOTT FOSTER, and individual,

                                        1 2 - 2 1 0 2 - C H

      Plaintiffs,                    No. 12-              CH
v.                                       Hon.

                                         EDWARD A. SERVITTO

BANK OF AMERICA, NA, and US BANK, NA, as Successor
Trustee to Bank of America, as Successor Trustee to LaSalle Bank, NA,
Trustee for the Holders of the Merrill Lynch First Franklin Mortgage Loan
Trust, Mortgage Loan Asset-Backed-Certificates, Series 2006-FF-18,

      Defendants.

---

**GANTZ ASSOCIATES**
BY:    ADAM J. GANTZ (P58558)
        JOHN B. BURCHAM (P45079)
        NICKOLAS C. BUONODONO (P70835)
Counsel for Plaintiffs
27750 Middlebelt Road, Suite 100
Farmington Hills, MI 48334
Telephone: (248) 987-6505

RECEIVED
MAY 9 2012
CARMELL
MACOMB COUNTY CLERK

---

**MOTION AND BRIEF SEEKING EX-PARTE TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF**

      Plaintiff Scott Foster, through his attorneys, Gantz Associates, hereby requests the entry

of an Ex-Parte Status Quo Order against Defendants Bank of America, NA, and US Bank, NA,

as Successor Trustee to Bank of America, as Successor Trustee to LaSalle Bank, NA, Trustee for

the Holders of the Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-

Backed-Certificates, Series 2006-FF-18, preserving the status quo by restraining and enjoining

the sheriff's sale of Property at issue, pending a Show Cause hearing on the merits of Plaintiff's

request for a Preliminary Injunction, seeking the same relief through trial.

      In support of his request for temporary injunctive relief, Plaintiff states the following:

1

## STATEMENT OF FACTS

In the interest of brevity, Plaintiff adopts and incorporates by reference the factual allegations set forth in his Verified Complaint, filed concurrently herewith, as though specifically set forth herein. (*See* Verified Complaint – **Ex. "1".**)

## LAW AND ANALYSIS

**I.      Grounds For Temporary Restraining Order Prior To Show Cause Hearing.**

MCR 3.310(B) governs the issuance of temporary restraining orders.  The rule states, in pertinent part, as follows:

> (1)      A temporary restraining order may be granted without written or oral notice to the adverse party or the adverse party's attorney only if:
>
> > (a)      it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued;
> >
> > (b)      the applicant's attorney certifies to the court in writing the efforts, if any, that have been made to give notice and the reasons supporting the claim that notice should not be required; MCR 3.310(B)(1).

In the instant action, Plaintiff's Verified Complaint establishes the fact that immediate and irreparable damage will be caused by the delay required to effect notice, in that there is a foreclosure auction sale scheduled for **this** Thursday, May 11, 2012, relative to the Property, which is a unique parcel of real estate, which cannot adequately be compensated in monetary damages.  Put plainly, **if a temporary restraining order is not granted, Plaintiff will lose his home!**

Moreover, it is important to note that counsel for Plaintiff contacts the foreclosing law firm in these situations to request stipulation to a status quo order, and to notify that if the requested relief is not granted, then counsel for Plaintiff would travel to the Court to seek

2

immediate injunctive relief, and to invite an attorney from the foreclosing law firm to appear to oppose the same. Counsel for Plaintiff's requests are routinely denied, as the foreclosing law firm does not have the authority to grant the relief requested, or to appear to argue against Plaintiff's request for injunctive relief, because they have been retained merely for foreclosure, and not litigation, hence the filing of the instant Ex-Parte Motion.

A temporary restraining order granted without notice must:

> (a)     be endorsed with the date and time of issuance;
>
> (b)     describe the injury and state why it is irreparable and why the order was granted without notice;
>
> (c)     except in domestic relations actions, set a date for hearing at the earliest possible time on the motion for a preliminary injunction or order to show cause why a preliminary injunction should not be issued. MCR 3.310(B)(2).

In the instant action, Plaintiff has stated above that notice was actually provided and the foreclosing law firm was even offered the opportunity to appear for Plaintiff's request for immediate injunctive relief, but has declined the same.

In addition, Plaintiff attaches hereto a proposed Temporary Restraining Order, requesting a hearing at the earliest possible time regarding the issuance of a preliminary and permanent injunction, and listing the above-referenced required items of notice.

Pursuant to the afore-mentioned considerations, Plaintiff has satisfied his burden under MCR 3.310 and is therefore entitled to a temporary restraining order, preserving the status quo, until this matter may be heard in open court.

**II.     Grounds For Preliminary Injunction After Show Cause Hearing.**

There are four factors to be considered by the Court in considering whether to grant a Preliminary Injunction:

> (1)     whether the movant has a considerable likelihood of success on the merits;

3

(2)   whether the movant would otherwise suffer irreparable injury as a result of the acts of the non-movant;

(3)   whether issuance of the temporary restraining order would cause substantial harm to others; and

(4)   whether public interests would be served by issuance of the temporary restraining order.

*Michigan State Employees Association v. Department of Mental Health*, 421 Mich 152; 365 NW2d 93 (1984).

Applying the afore-mentioned factors to the present case, it becomes apparent that Plaintiff is entitled to temporary and permanent injunctive relief.

First, Plaintiff has a considerable likelihood of success on the merits.  Specifically, Plaintiff's Verified Complaint sets forth a myriad of well-pled claims, some of which may require serious review by this Honorable Court, but some of which are simple, clear, and uncontrovertibly establish that **the foreclosing entity does not own the loan or otherwise have authority to foreclose under Michigan law, as easily evidenced by the chain of title in the Register of Deeds' office**.

Second, Plaintiff will certainly suffer irreparable injury as a result of the auction sale, because the property is a unique parcel of real estate which cannot be adequately compensated in monetary damages.

Third, no substantial harm would be occasioned upon any third party if an injunction is granted.  On the contrary, this request merely maintains the status quo, and if anything, the public would be adversely affected by the continuation of a policy in which entities such as Defendants trick people into foreclosure, by intentionally lying to them, in order to trigger a bailout or to cash in on an asset-backed-security and/or mortgage insurance policy.

If a message is not sent to companies, like Defendants, that they cannot violate the laws of the United States and/or the State of Michigan, lie, trick, and steal people's properties out

4

from underneath them, in violation of both state and federal law, all to obtain a bailout or windfall profit from betting against loans that they are **required by federal law to fight to save**, said companies will continue to harm other homeowners in the State of Michigan.

Finally, public interests will be served by the issuance of the temporary injunction, for the same reason that the interests of third parties will be served. Put plainly, on a regular basis, Defendants engage in patterns and practices of defrauding people into losing their homes, and Defendants need to know that such conduct will not be tolerated.

## CONCLUSION

Pursuant to the foregoing, Plaintiff is entitled to the entry of a Temporary Restraining Order preserving the status quo, by enjoining the foreclosure auction sale of the Property, pending a hearing relative to his request for a Preliminary and/or Permanent Injunction seeking the same relief through trial.

Respectfully submitted:

GANTZ ASSOCIATES

Date: May 8, 2012                    By: _____

ADAM J. GANTZ (P58558)
NICKOLAS C. BUONODONO (P70835)
Counsel for Plaintiff

5

| STATE OF MICHIGAN COUNTY OF MACOMB CIRCUIT COURT | **ORDER** | Case No. <br> **12-2102-CH** |
|---|---|---|

**SCOTT FOSTER** _____   Plaintiff(s)   Attorney:   **BUONODONO**   P# **70835**

vs

**BANK OF AMERICA, NA, ET AL.**   Defendant(s)   Attorney:   **RAZZAQUE**   P# **67627**

At a session of the Court, held on   _____ **May 21, 2012** _____

ORDER OF   **MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** _____
                                                                Title of Order

IT IS ORDERED:

THE MOTION IS GRANTED. THIS ORDER SHALL BE EFFECTIVE UPON ENTRY, AND PRESERVES THE STATUS QUO, BY RESTRAINING AND ENJOINING THE SHERIFF SALE OF THE REAL PROPERTY, COMMONLY KNOWN AS 27021 HICKLER LANE, HARRISON TOWNSHIP, MICHIGAN, PENDING FURTHER ORDER OF THE COURT.

A STATUS CONFERENCE IS SCHEDULED FOR TUESDAY, JUNE 5, 2012 AT 8 A.M. AT THE STATUS CONFERENCE, THE COURT WILL TAKE UP THE ISSUE OF WHETHER THE COURT SHALL ENTER AN ESCROW ORDER.

EDWARD A. SERVITTO
CIRCUIT JUDGE

MAY 21 2012

A TRUE COPY
CARMELLA SABAUGH COUNTY CLERK
By_____ Court Clerk

_____
HON. EDWARD SERVITTO          CIRCUIT JUDGE

Approved as to form and substance by:

_____ P70835
Signature of attorney for plaintiff

_____ P67627
Signature of attorney for defendant

(5/25/04)

# STATE OF MICHIGAN
## IN THE MACOMB COUNTY CIRCUIT COURT

SCOTT FOSTER, and individual,

            Plaintiffs,

v.

BANK OF AMERICA, NA, and US BANK, NA, as Successor
Trustee to Bank of America, as Successor Trustee to LaSalle Bank, NA,
Trustee for the Holders of the Merrill Lynch First Franklin Mortgage Loan
Trust, Mortgage Loan Asset-Backed-Certificates, Series 2006-FF-18,

            Defendants.

1 2 - 2 1 0 2 - C H

No. 12-         CH
Hon.

EDWARD A. SERVITTO

---

**GANTZ ASSOCIATES**
BY:    ADAM J. GANTZ (P58558)
         JOHN B. BURCHAM (P45079)
         NICKOLAS C. BUONODONO (P70835)
Counsel for Plaintiffs
27750 Middlebelt Road, Suite 100
Farmington Hills, MI 48334
Telephone: (248) 987-6505

---

### EX-PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

At a session of said Court, held in the City of Mt.
Clemens, County of Macomb, State of Michigan,
On: _____ **MAY  9 2012**
Present: Hon. _____

EDWARD A SERVITTO

Plaintiff filed a Verified Complaint, and Motion and Brief in support, seeking immediate
and preliminary injunctive relief.  The Court has reviewed these documents, from which it
appears that unless the court enjoins the sheriff's sale scheduled for Thursday, May 11, 2012,
until a hearing on the merits, the status quo will change, and Plaintiff will suffer irreparable
harm, in that he will lose his home, and the Court is otherwise fully advised in the premises.

**IT IS ORDERED:**

The instant Temporary Restraining Order is and shall be effective upon entry, and
preserves the status quo, by restraining and enjoining the sheriff's sale of the real property,

commonly known as 27021 Hickler Lane, Harrison Township, Michigan, pending a hearing relative to Plaintiff's request for a Preliminary and/or Permanent Injunction seeking the same relief through trial.

The injunctive relief against Defendants is binding, in accordance with MCR 3.310(C)(4), on Defendants' officers, agents, employees, and attorneys and on all persons in active concert or participation with them who receive notice of this order by personal service or otherwise.

A bond or other form of security is not required, because Defendants will not suffer damages as a result of the maintenance of the status quo until a hearing on the merits.

Counsel for Plaintiff shall serve a copy of this Order, as well as the Summons and Complaint, Motion and Brief, and all other applicable pleadings, as follows:

    1.    Certified mail, return receipt requested, with delivery restricted to the addressee, to Defendant Bank of America, N.A., at its headquarters located at 100 North Tryon Street, Charlotte, NC 28255;

    2.    Certified mail, return receipt requested, with delivery restricted to the addressee, to Defendant US Bank, at its headquarters located at U.S. Bancorp Center, 800 Nicollet Mall, Minneapolis, MN 55402; and

    3.    Facsimile to the law firm which is conducting the foreclosure at issue on behalf of Defendants, being Trott & Trott, P.C., Attn: FC X (Foreclosure Team X), (248) 593-1302.

A show cause hearing is scheduled for _5/31/_____, _____ __, 2012, at _9:00_ _△_.m., in the courtroom of the Honorable _____, in the Macomb County Circuit Court.

This order is issued on _____, May 9, 2012, at __:__ _.m.

Prepared by:  **GANTZ ASSOCIATES**

By:  _____
      Adam J. Gantz (R58568)
      Counsel for Plaintiff

Circuit Court Judge ~~EDWARD A. SERVITTO~~
**CIRCUIT JUDGE**

MAY - 9 2012

A TRUE COPY
CARMELLA SABAUGH COUNTY CLERK
BY: _____ Court Clerk

2

**Ex. 2**

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

SCOTT FOSTER,

               Plaintiff,

v.

BANK OF AMERICA, N.A. and
US BANK, N.A. as Successor Trustee to
Bank of America, as Successor Trustee
to LaSalle Bank, N.A., Trustee for the
Holders of the Merrill Lynch First
Franklin Mortgage Loan Trust,
Mortgage Loan Asset-Backed-
Certificates, Series 2006-FF-18,

               Defendants.

Case No. 12-2102-CH

Hon. Edward A. Servitto

_____/

| | |
|---|---|
| GANTZ ASSOCIATES<br>Adam J. Gantz (P58558)<br>John B. Burcham (P45079)<br>Nickolas C. Buonodono (P70835)<br>Attorneys for Plaintiffs<br>27750 Middlebelt Road, Ste. 100<br>Farmington Hills, MI 48334<br>(248) 987-6505 | DICKINSON WRIGHT PLLC<br>Amy Sabbota Gottlieb (P67020)<br>Attorneys for Defendants<br>2600 West Big Beaver Rd., Ste. 300<br>Troy, MI 48084<br>(248) 433-7286<br>agottlieb@dickinsonwright.com |

_____/

## NOTICE OF FILING REMOVAL TO FEDERAL COURT

TO:    Clerk of Court
        Macomb County Circuit Clerk

PLEASE TAKE NOTICE that the Notice of Removal to Federal Court of the above-captioned action from the Macomb County Circuit Court to the United States District Court for the Eastern District of Michigan, Southern Division, a copy of which is attached hereto, was electronically filed on June 4, 2012 in the United States District Court for the Eastern District of Michigan, Southern Division.

Dated:  June 4, 2012

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: _____

Amy Sabbota Gottlieb (P67020)
Dickinson Wright PLLC
*Attorneys for Defendants*
2600 West Big Beaver Road, Suite 300
Troy, Michigan 48084-3312
(248) 433-7286

2

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

SCOTT FOSTER,

      Plaintiff,

v.

BANK OF AMERICA, N.A. and
US BANK, N.A. as Successor Trustee to
Bank of America, as Successor Trustee
to LaSalle Bank, N.A., Trustee for the
Holders of the Merrill Lynch First
Franklin Mortgage Loan Trust,
Mortgage Loan Asset-Backed-
Certificates, Series 2006-FF-18,

      Defendants.

Case No. 12-2102-CH

Hon. Edward A. Servitto

_____/

GANTZ ASSOCIATES
Adam J. Gantz (P58558)
John B. Burcham (P45079)
Nickolas C. Buonodono (P70835)
Attorneys for Plaintiffs
27750 Middlebelt Road, Ste. 100
Farmington Hills, MI  48334
(248) 987-6505

DICKINSON WRIGHT PLLC
Amy Sabbota Gottlieb (P67020)
Attorneys for Defendants
2600 West Big Beaver Rd., Ste. 300
Troy, MI 48084
(248) 433-7286
agottlieb@dickinsonwright.com

_____/

## **PROOF OF SERVICE**

On June 4, 2012 the undersigned served a copy of a Notice of Filing Removal to Federal

Court and this Proof of Service upon the parties listed below by enclosing in a sealed envelope

with first class postage fully prepaid, and depositing in the United States mail addressed to:

Adam J. Gantz, Esq.
Gantz Associates
27750 Middlebelt Rd., Ste. 100
Farmington Hills, MI  48334

Laura Baumhardt
Legal Assistant
Dickinson Wright PLLC

Dated:  June 4, 2012